IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| **PERCILLA JOHNSON,** | * |
|     **Plaintiff,** | * |
| **v.** | *    Case No.: 8:19-cv-01859-PWG |
| **ALEX AZAR II,** *et al.*, | * |
|     **Defendant.** | * |
| | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM OPINION AND ORDER

Percilla Johnson filed this lawsuit against Alex Azar ("Secretary Azar"), Secretary, United States Department of Health and Human Services ("HHS") and its agency the Food and Drug Administration ("FDA") (collectively, the "Defendants"), pursuant to Title VII of the Civil Rights Act of 1964, alleging that she was discriminated against because of her sex when a coworker subjected her to sexual harassment, creating a hostile work environment. Second Am. Compl. ("Compl.") ¶¶ 1-2, ECF No. 26. Defendants filed a motion to dismiss arguing that Ms. Johnson has not adequately pleaded that the alleged harasser altered the terms and conditions of her employment and arguing that she has not adequately pleaded that the alleged harassment was severe or pervasive. Defs.' Mot. 1, ECF No. 27. Alternatively, Secretary Azar seeks summary judgment, repeating the same grounds as he did for dismissal and contending that Ms. Johnson has not produced evidence that the conduct of the alleged harasser is imputable to Secretary Azar. *Id.* For the reasons that follow, I will deny both the motion to dismiss and the motion for summary judgment.

**FACTUAL BACKGROUND**

The following facts are allegations from Ms. Johnson's complaint.[1] Ms. Johnson, at all times relevant to this litigation, was employed by the United States Department of Health and Human Services at the Food and Drug Administration as a program specialist. Compl. ¶¶ 5, 10.

On October 13, 2016, coworker Heriberto Negrón-Rivera asked Ms. Johnson out to lunch to discuss work-related matters. Compl. ¶ 11. Without Ms. Johnson's permission, Mr. Negrón-Rivera "grabbed her by the hair, forcefully kissed her sticking his tongue down her throat and grabbed her breast." Compl. ¶ 11. Mr. Negrón-Rivera continuously asked Ms. Johnson to go to a hotel room, offered her oral sex, and asked her what her sexual fantasies were. Compl. ¶ 11. Ms. Johnson told Mr. Negrón-Rivera "that she was not interested in a sexual relationship and that his comments were inappropriate, unwelcome and that she found his behavior to be harassing and troubling in nature." Compl. ¶ 11.

Ms. Johnson told her supervisor, Kimberly Mbodi about the assault and harassment four days later. Compl. ¶ 12. Ms. Mbodj told Ms. Johnson not to go back out to lunch with Mr. Negrón-Rivera, but discouraged her from filing a complaint. Compl. ¶ 12. According to Ms. Mbodj, she reported Ms. Johnson's experience to her supervisor, Debra Yvette Arline on that same day. Compl. ¶ 13. According to Ms. Arline, Ms. Mbodj did not tell her of the incident until ten days after Ms. Johnson had reported the incident to Ms. Mbodj, which was on October 27, 2019. Compl. ¶ 13.

---

[1] In this section I will detail the facts alleged by Ms. Thompson, because for purposes of considering a motion to dismiss, this Court takes the facts alleged in the complaint as true. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). As I explain below however, I am converting this motion into one for summary judgment. As such, I will detail the opposing facts relied upon by each party when relevant.

On October 19, 2016, Ms. Johnson entered Mr. Negrón-Rivera's office to retrieve work-related items. Compl. ¶ 14. Upon entering, Mr. Negrón-Rivera "grabbed [Ms. Johnson], bear hugged her and forcefully kissed her putting his tongue down her throat while fondling her breast." Compl. ¶ 14. Again, he propositioned Ms. Johnson for dates and sex. Compl. ¶ 14. Again, Ms. Johnson informed her supervisor, Ms. Mbodj, of the assault and harassment, who told Ms. Johnson to send Mr. Negrón-Rivera "an email telling him to stop sexually harassing her." Compl. 14-15.

Ms. Mbodj had not been provided training from her employer concerning the policies outlining how a supervisor should handle sexual harassment allegations by employees she supervised. Compl. ¶ 13.

On October 26, Ms. Johnson was in a meeting where Mr. Negrón-Rivera "continually stared at her." Compl. ¶ 16. Later that day, Ms. Johnson was in a coworker's office when she encountered Mr. Negrón-Rivera and "he made her feel uncomfortable continuing to look at her as though he was undressing her and leering at her in a sexually provocative manner." Compl. ¶ 16.

The next day, October 27, Ms. Johnson contacted her supervisor's supervisor, Ms. Arline, to report the sexual harassment and assault incidents. Compl. ¶ 17. Ms. Arline told Ms. Johnson she would send along a pamphlet on procedures for reporting sexual assault but failed to send the pamphlet or follow through with any action. Compl. ¶ 17. After Ms. Johnson obtained a Peace Order (a restraining order) against Mr. Negrón-Rivera from the District Court of Maryland for Montgomery County, Ms. Arline separated Ms. Johnson and Mr. Negrón-Rivera. Compl. ¶ 18. As a result of the assaults and harassment, Ms. Johnson has suffered severe injuries such as mental anguish along with physical pain. Compl. ¶ 32.

HHS conducted an investigation that revealed Mr. Negrón-Rivera had sexually harassed two other coworkers in the past. Compl. ¶ 20. The investigation revealed that Mr. Negrón-Rivera

sexually harassed Jane Doe #1 in 2013 by writing her propositioning emails, but HHS failed to take appropriate actions.  Compl. ¶¶ 21-22.  The investigation revealed that Mr. Negrón-Rivera sexually harassed Jane Doe # 2 in May of 2016 by propositioning her.  Compl. ¶ 23.  According to Mr. Negrón-Rivera, "he was not on notice and/or disciplined as a result of sexual harassment complaints lodged against him by any of HHS employees."  Compl. ¶ 24.

HHS did not provide any EEO or sexual harassment training to its employees, has not provided any of its employees any policies on sexual harassment, and has not provided procedures to its employees detailing the avenues by which an employee could file a complaint.  Compl. ¶¶ 25-31.

Ms. Johnson filed this lawsuit against Defendants asserting that she was wrongfully discriminated against by way of sexual harassment, forcing her to work in a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964.  Compl ¶¶ 35-47.  Defendants seek to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See* Mot. Mem. 1, ECF No. 27-1.  Alternatively, Defendants move this Court to grant him summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure.  *Id.*  The parties have fully briefed their arguments.  *See* ECF Nos. 27-1, 28, 29.  A hearing is not necessary.  *See* Loc. R. 105.6 (D. Md. 2018).  Because there are genuine disputes of material fact the motion, construed as a motion for summary judgment, is denied.

## STANDARD OF REVIEW

Defendants moved to dismiss Ms. Johnson's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, moved for summary judgment in their favor pursuant to Federal Rule of Civil Procedure 56(a).  Mot. 1, ECF No. 27.  Defendants attached three exhibits to their motion for the Court's consideration: (1) the Report of Investigation ("ROI") conducted

by HHS and FDA; (2) proposed notice of termination of Mr. Negrón-Rivera; and (3) the deposition of Ms. Arline.  ECF Nos. 1, 2, 3.  Defendants argue that the Court's consideration of the first two do not convert the motion into one for summary judgment because Ms. Johnson references these documents in her complaint.  Mot. Mem. 7.  Defendants also argue that to the extent the Court relies on the deposition, converting the motion to dismiss into a motion for summary judgment would be proper under Federal Rule of Civil Procedure 12(d).  *Id.* Ms. Johnson makes no argument in her opposition that the motion should not be converted into one for summary judgment and did not make a motion under Rule 56(d), which allows a court to defer consideration of a motion when a nonmovant makes a showing that "it cannot present facts essential to justify its opposition."  Fed. R. Civ. P. 56(d)

Ms. Johnson does reference the ROI in her complaint, and therefore consideration of the entire report would not convert the motion to dismiss into one for summary judgment.  Compl. ¶¶ 21-24.  However, Ms. Johnson references neither the proposed termination of Mr. Negrón-Rivera nor Ms. Arline's deposition in her complaint.  Therefore, the Court's consideration of either document would convert the motion into one for summary judgment.  Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").  I must now decide whether converting the motion into one for summary judgment would be proper.

Under Fourth Circuit law, proper conversion under Rule 12(d) requires two things: (1) that all parties "be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment;" and (2) that all parties "be afforded a reasonable opportunity for

discovery." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). Ms. Johnson was on notice that the Court may convert the motion to dismiss into one for summary judgment because Defendants attached the documents as exhibits to their motion. *Id.* ("When a party is aware that material outside the pleadings is before the court, the party is on notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment."); *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). Additionally, the Defendants' motion is styled as a "Motion to Dismiss or For Summary Judgment," ECF No. 27, which further put her on notice that the Court could convert the motion to dismiss to a motion for summary judgment. *See id.* at 260-61; *Dabas v. Brennan*, Civil No. CCB-17-392, 2018 WL 1300965, at *4 (D. Md. Mar. 13, 2018). Ms. Johnson also had a reasonable opportunity for discovery. *Laughlin*, 149 F.3d at 261 (affirming a district court's grant of summary judgment when the nonmoving party failed to make an appropriate motion under Rule 56(d)); *see also Dabas*, 2018 WL 1300965, at *4 (finding that the plaintiff had reasonable opportunity for discovery when the plaintiff referred to the defendant's motion as one for summary judgment, submitted additional documentary exhibits attached to their opposition, and the administrative record was "voluminous"). Therefore, the Court will consider the documents attached to Defendants' motion and the documents attached to Ms. Johnson's opposition, converting Secretary Azar's motion to dismiss or in the alternative, motion for summary judgment, into a motion for summary judgment.

Federal Rule of Civil Procedure 56(a) provides for the judgment in favor of the movant "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In reviewing the evidence related to a motion for summary judgment, the Court considers undisputed facts, as well as the disputed facts viewed in the light most favorable to the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009); *George &*

*Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009); *Dean v. Martinez*, 336 F. Supp. 2d 477, 480 (D. Md. 2004). Only factual disputes that "might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Additionally, the factual dispute must be genuine to defeat a motion for summary judgment, in that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record. . . a court should not adopt that version."). It is the nonmoving party's burden to confront a motion for summary judgment with affirmative evidence to show that a genuine dispute of material fact exists. *Anderson*, 477 U.S. at 256. A plaintiff nonmovant, "to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor." *Id.*

## DISCUSSION

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Because "an employee's work environment is a term or condition of employment, Title VII creates a hostile working environment cause of action." *EEOC v. R & R Ventures*, 244 F.3d 334, 338 (4th Cir. 2001). A plaintiff may establish a violation of Title VII by proving that sexual harassment created a hostile or abusive work environment. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). To establish a hostile work environment claim based on sexual harassment, "a plaintiff-employee must prove that (1) the conduct was unwelcome; (2) it was based on the plaintiff's sex; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to

create an abusive work environment; and (4) it was imputable on some factual basis to the employer." *Crockett v. Mission Hosp., Inc.*, 717 F.3d 348, 354 (4th Cir. 2013).

Defendants dispute only that Ms. Johnson cannot satisfy the third and fourth elements of her claim, i.e., that the conduct was sufficiently severe or pervasive, or that the conduct could be imputed to Defendants. Mot. Mem. 1, 9, 12. Therefore, I shall address these two elements.

## I.     Severe or Pervasive Conduct

Whether the complained-of conduct is sufficiently severe or pervasive "is quintessentially a question of fact." *Mosby-Grant v City of Hagerstown*, 630 F.3d 326, 335 (4th Cir. 2010) (quoting *Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 773 (4th Cir. 1997)). It "requires a showing that 'the environment would reasonably be perceived, and is perceived, as hostile or abusive.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2014) (en banc). This element, the Fourth Circuit has explained, "has both subjective and objective parts." *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 421 (4th Cir. 2014). First, under the subjective prong, the plaintiff must show that she perceived the work environment as abusive or hostile. *See id.* Second, under the objective prong, she must establish that a reasonable person in the plaintiff's position would likewise perceive the harassment as severe or pervasive. *See id.*

That Ms. Johnson found Mr. Negrón-Rivera's conduct subjectively offensive does not appear to be disputed, nor could it be, based upon the factual allegations in the amended complaint. Defendants argue, though, that the alleged offenses were not so serious or frequent that a reasonable person in Ms. Johnson's position would view the workplace as hostile, and they argue that Ms. Johnson failed to allege that her job responsibilities, pay, or performance evaluations were affected. Mot Mem. 10-12. I am convinced that there is sufficient evidence to raise a genuine factual dispute as to whether she experienced a hostile work environment. There is no denying

8

that Mr. Negrón-Rivera made inappropriate advances, including unwelcome kissing, groping, and sexual propositions. Ms. Johnson was sufficiently affected that she obtained a restraining order against Mr. Negrón-Rivera, indicating that she feared physical harm or danger, and she sought therapy for distress, fear, depression, and sleeplessness as a result of being sexually harassed. Resp. Exs. 1, 2, 3. In her affidavit, she testifies that she suffered major distress in her work life, could not focus on her responsibilities, was embarrassed going to work and a target of office gossip, was off work for six weeks, lost her hair, and her marriage suffered. Resp. Ex. 3. Ms. Johnson also provided evidence of other women in the workplace who had similarly experienced sexual harassment by Mr. Negrón-Rivera. Resp. Exs. 3, 5, 6, 7.

Defendants view the alleged facts more benignly, asserting that "[t]wo kisses with attending over-the clothes hugging and touching" in the workplace is not enough to "clear a high bar in order to satisfy the severe or pervasive test." Reply 2 (quoting *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008)). In their motion memorandum, Defendants provide examples of "worse" behavior that was deemed insufficient in other Fourth Circuit cases, and they cite a 1993 Seventh Circuit "finding that several incidents of unwanted touching, attempts to kiss, placing 'I love you' signs in work area, and asking a female employee out on dates did not create a hostile work environment." Mot. Mem. 11-12 (citing *Pesso v. Montgomery General Hosp.*, 181 F.3d 90 (4th Cir. 1999); *Hopkins v. Balt. Gas & Elec. Co.*, 77 F.3d 745, 753–54 (4th Cir. 1996); *Weiss v. Coca–Cola Bottling Co.*, 990 F.2d 333, 337 (7th Cir. 1993)). It should not be lost on even a casual reader that these cases all have one notable thing in common: they were decided more than twenty years ago, when notions of what a female employee was expected to put up with from a male coworker in return for the opportunity to earn a living may have been more tolerant than what a contemporary jury would be willing to accept. As the Supreme Court has reminded us,

determining whether a hostile workplace harassment claim is sufficiently severe when viewed objectively requires the Court to consider it from the "perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances'". *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998). More to the point, "[t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing . . . and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive." *Id.* at 81–82. Applying this test with an awareness of contemporary expectations regarding the relationship between male and female coworkers, I cannot conclude (as Defendants would have me) that a male employee's unwanted, forced kiss ("involving [his] tongue'', as the Defendants put it) of a female employee, accompanied by grabbing her breast and proposing sex acts, is conduct that a reasonable female employee in the Plaintiff's position would accept with sangfroid. It may be that Mr. Negrón-Rivera's behavior in the workplace would not be considered severe enough decades ago, but I find it more appropriate to leave the question for a jury to decide in the context of current norms.

## II.     Imputable Conduct

"The last element of a hostile work environment claim is that some basis exists for imputing liability to" the defendant. *Smith v. First Union Nat. Bank*, 202 F.3d 234, 243 (4th Cir. 2000). If, as here, the harassing employee was the plaintiff's coworker (as opposed to a supervisor), "the employer is liable only if it was negligent in controlling working conditions." *Boyer-Liberto*, 786 F.3d at 278 (quoting *Vance v. Ball State Univ.*, 570 U.S. 421. 424 (2013)). That will be the case where "the employer 'knew or should have known about the harassment and failed to take effective

action to stop it.'" *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 255 (4th Cir. 2015) (quoting *Howard v. Winter*, 446 F.3d 559, 565 (4th Cir. 2006)). "The distribution of an anti-harassment policy provides 'compelling proof' that the company exercised reasonable care in preventing and correcting harassment." *Hoyle v. Freightliner. LLC*, 650 F.3d 321, 335 (4th Cir. 2011). In the face of such evidence, a plaintiff "must show by a preponderance of the evidence that the policy was either adopted or administered in bad faith or that it was otherwise defective or dysfunctional." *Id.*; *see Cooper v. Smithfield Packing Co.*, 724 F. App'x 197, 203 (4th Cir. 2018).  The Fourth Circuit requires that "the employer's response to each known incident of coworker harassment is reasonably prompt, and the employer takes remedial measures that are reasonably calculated to end the harassment." *E.E.O.C. v. Xerxes Corp.*, 639 F.3d 658, 675 (4th Cir. 2011).

Defendants assert that they acted promptly and reasonably by escalating actions in response to Ms. Johnson's complaints and ultimately, by firing Mr. Negrón-Rivera after reviewing an investigation report recounting two previous incidents of his inappropriate behavior. Mot. Mem. 5. Ms. Johnson offers evidence that her supervisor, who was relatively new and had not been provided any training in the area of sexual harassment, did not take prompt corrective action. Compl. ¶¶ 12-13; Resp. Ex. 5 at 28-29. And after a second incident, her supervisor told her only to send Mr. Negrón-Rivera an email telling him to stop sexually harassing her. Compl. ¶ 15. Ms. Johnson then contacted her supervisor's supervisor, who informed her about a pamphlet on procedures for reporting sexual harassment but did not send it to her as promised. *Id.* ¶ 17. Ms. Johnson states that no action was taken until she resorted to obtaining a restraining order against her coworker. *Id.* ¶ 18. Ms. Johnson also provides evidence that Defendants should have known of Mr. Negrón-Rivera's behavior and did not effectively train supervisors on how to deal with reports of sexual harassment. Resp. Exs. 5, 7; Mot. Ex. 3 at 85.  In my view, there is a genuine

11

dispute as to whether Defendants' response to Ms. Johnson's complaints was sufficiently prompt and reasonable.

## CONCLUSION

In sum, Ms. Johnson has alleged facts from which a reasonable trier of fact could conclude that Mr. Negrón-Rivera's conduct in the workplace was severe or pervasive enough to create a hostile work environment. She has also alleged facts from which a reasonable trier of fact could conclude that the harassment was imputable to Defendants. Accordingly, I shall deny Defendants' Motion to Dismiss or for Summary Judgment.

## ORDER

For the reasons stated in this Memorandum and Order, it is this 5th day of November 2020, hereby ORDERED that:

1. Defendants' Motion to Dismiss or for Summary Judgment, ECF No. 27, construed as a motion for summary judgment, is DENIED;

2. Defendant shall file its Answer to the Second Amended Complaint, ECF No. 26, on or before November 20, 2020, after which the Court will enter a Scheduling Order and schedule a Federal Rule of Civil Procedure 16 conference with the parties to discuss further trial proceedings.

/S/
Paul W. Grimm
United States District Judge